1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

YARED HASSANE,

9                                    Plaintiff,                    No. C10-314Z

10      v.

11      ERIC HOLDER, U.S. Attorney General, et         ORDER
        al.

12                                    Defendants.

13

14                              **I.    INTRODUCTION**

15          This matter comes before the Court on Defendants' (collectively the "government")

16      motion to dismiss under Fed. R. Civ. P. 12(b)(1) (subject matter jurisdiction) and 12(b)(6)

17      (failure to state a claim), or in the alternative, for summary judgment.  Docket no. 7.  Neither

18      party has requested oral argument.

19                              **II.    BACKGROUND**

20          Plaintiff Yared Hassene[1] is a citizen of Ethiopia, currently living in the United States

21      under a February 20, 2007 grant of asylum.  Martin Decl. ¶ 3, docket no. 7, Ex. A.  On

22      August 5, 2008, Hassene filed an I-485 application to adjust his status to that of a lawful

23      permanent resident.  Id. at ¶ 3-4; Complaint at ¶ 6, docket no. 1.  Although Hassene has

24

25      _____

26          [1] Although the case caption spells the plaintiff's name as "Hassane," both parties' pleadings use
        the spelling "Hassene."  For consistency purposes, the Court will use what appears to be the correct
        spelling of the plaintiff's name - "Hassene."

ORDER   -1-

1   completed the necessary security checks, his application remains open and pending.  Martin

2   Decl. ¶ 10, docket no. 7, Ex. A; Complaint at ¶ 8, docket no. 1.

3         Hassene's adjustment application has been pending since August 2008 because

4   information contained in his application indicated that he was involved with the Al Amhara

5   People's Organization ("AAPO") in Ethiopia.  Martin Decl. ¶ 10, docket no. 7, Ex. A.

6   During Hassene's membership in the AAPO, it merged into the United Ethiopian Democratic

7   Forces ("UEDF"), a large organization that meets the definition of a Tier III undesignated

8   terrorist organization.  Id.  Hassene's application therefore contains evidence that he has

9   provided material support to a terrorist organization, which will likely lead to denial of his

10   I-485 application.  Id. at ¶ 20.

11         Due to his ties to the AAPO and UEDF, the United States Citizenship and

12   Immigration Services ("USCIS") notified Hassene on February 4, 2010, that his application

13   had been placed on hold indefinitely, pending review by the Secretary of the Department of

14   Homeland Security ("DHS").  Complaint at ¶ 9, docket no. 1.  The application was placed on

15   hold pursuant to the Consolidated Appropriations Act of 2008 (the "CAA"), which expanded

16   the authority of the Secretary of Homeland Security to make exemptions to certain terrorism

17   related grounds for inadmissibility.[2]  See 8 U.S.C. § 1182(d)(3)(B)(I).  As a result of the

18   changes made by the CAA, USCIS issued a memorandum directing that all cases involving

19   applicants that might benefit from the expanded statutory discretion be placed on hold.

20   Defs.' Mot. at Ex. B, docket no. 7; see also id. at 9 n.8 (citing html address for updated

21   electronic version of USCIS policy memorandum).  Hassene's application is on hold until

22   such time as DHS determines whether it will exercise its exemption authority to adjust

23   Hassene's status notwithstanding his ties to a Tier III terrorist organization.  Complaint at

24   ¶ 9, docket no. 1.

25

26         [2] It is not clear from the record precisely when Hassene's application was placed on hold.  The government's policy on such holds was put in place in March 2008, before Hassene filed his application.

ORDER   -2-

1   Hassene filed his complaint in this case on February 22, 2010, seeking mandamus

2   relief in the form of an order directing USCIS to reach a final decision regarding his

3   application for adjustment.  Id. at ¶ 1.  Hassene contends that USCIS has failed to act in a

4   reasonable period of time, as required by the Administrative Procedures Act ("APA") and

5   federal mandamus statute.  Id. at 2.  The Government has moved for dismissal of the

6   complaint under Fed. R. Civ. P. 12  for lack of subject matter jurisdiction (Rule 12(b)(1)) and

7   for failure to state a claim (Rule 12(b)(6)).  In the alternative, the government has moved for

8   summary judgment pursuant to Fed. R. Civ. P. 56.

9   ### III.   ANALYSIS

10  **A.    Standards of Review**

11  1.    <u>Motions to Dismiss</u>

12  When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), a court

13  should accept all allegations in the complaint as true, and draw all inferences in the light

14  most favorable to the nonmoving party.  <u>Newdow v. Lefevre</u>, 598 F.3d 638, 642 (9th Cir.

15  2010) (Rule 12(b)(6));  <u>Carson Harbor Village, Ltd. v. City of Carson</u>, 353 F.3d 824, 826

16  (9th Cir. 2004) (Rule 12(b)(1)).  A court may not consider matters outside the pleadings on a

17  Rule 12(b)(6) motion.  <u>United States v. LSL Biotechnologies</u>, 379 F.3d 672, 699 (9th Cir.

18  2004).  However, the court may consider affidavits or other evidence in the record in

19  deciding a motion to dismiss pursuant to Rule 12(b)(1).  <u>Sommatino v. United States</u>, 255

20  F.3d 704, 710 n.3 (9th Cir. 2001).

21  2.    <u>Motion for Summary Judgment</u>

22  Summary judgment shall be granted if no genuine issue of material fact exists and the

23  moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving

24  party bears the initial burden of demonstrating the absence of a genuine issue of material

25  fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  When a properly supported motion

26  for summary judgment has been presented, the adverse party "may not rest upon the mere

allegations or denials" of its pleadings.  Fed. R. Civ. P. 56(e).  The non-moving party must set forth "specific facts" demonstrating the existence of a genuine issue for trial.  Id.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.**      **The Government's Rule 12(b)(1) Motion to Dismiss**

Defendants move to dismiss for lack of subject matter jurisdiction under two statutory provisions: 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(a)(2)(B)(ii).

1.      8 U.S.C. § 1252(g).

Section 1252(g) provides, in relevant part:

> ...[N]o court shall have jurisdiction to hear any cause of action by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any Alien under this Act.

8 U.S.C. § 1252(g) (emphasis added).  The government argues that the Supreme Court has applied section 1252(g) to bar judicial review in cases like Hassene's.  See Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471 (1999).

A number of U.S. District Courts have addressed the precise argument raised by the government in lawsuits with similar factual scenarios, and it appears that every court that has addressed the issue has found that section 1252(g) does not bar judicial review.  See Sultan v. Roark, 2010 WL 1992195, *2 (E.D.Cal. 2010) ("While defendants argue section 1252(g)'s bar to judicial review should be interpreted broadly and applied outside the context of removal... the Ninth Circuit indicates otherwise in [Kwai Fun Wong v. United States, 373 F.3d 952, 965 (9th Cir. 2004)] where it states that 'after [Reno], we have narrowly construed section 1252(g).'"); see also Khan v. Scharfen, 2009 WL 941574, *3-4 (N.D.Cal. 2009); Debba v. Heinauer, 2009 WL 146039, *3 (D.Neb. 2009); Ahmed v. Scharfen, 2009 WL 55939, *6 (N.D.Cal. 2009).  Accordingly, the Court holds that section 1252(g) does divest the Court of subject matter jurisdiction to hear Hassene's case.

2.     8 U.S.C. § 1252(a)(2)(B)(ii).

Defendants also argue that 8 U.S.C. § 1252(a)(2)(B)(ii) applies to preclude judicial review of Hassene's case.  Section 1252(a)(2)(B)(ii) provides:

> Notwithstanding any other provision of law (statutory or nonstatutory)... and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review... (ii) any other decision or action of the Attorney General or Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security.

8 U.S.C. § 1252(a)(2)(B)(ii).  The government concedes that this Court and other courts in this District have generally held that section 1252(a)(2)(B)(ii) does not bar judicial review of claims involving adjustment of status where there is an unreasonable delay.  Defs.' Mot. at 11 n.9, docket no. 7 citing Chen v. Chertoff, C06-1760 (Zilly, J.), docket no. 30; Hong Wang v. Chertoff, 550 F.Supp.2d 1253 (W.D.Wash. 2008) (Jones, J.); Chen v. Heinauer, 2007 WL 1468789 (W.D.Wash. 2007) (Lasnik, J.); Huang v. Gonzalez, C07-0096 (Martinez, J.).  See also Singh v. Heinauer, 2008 WL 5110862, *2 (W.D.Wash. 2008) (Jones, J.) (exercising jurisdiction despite section 1252(a)(2)(B)(ii) where question before court was whether the government must reach a final decision on an application for adjustment placed on hold for exemption review by DHS).  This is consistent with decisions by the overwhelming majority of district courts.  Sultan, 2010 WL 1992195, *4 (holding that section 1252(a)(2)(B)(ii) does not preclude judicial review in cases involving applications for adjustment of status placed on hold for DHS exemption review); Panchishak v. Dep't of Homeland Sec., 2009 WL 2135299, *2 (S.D.N.Y. 2009) (same); Khan, 2009 WL 941574 at *5 (same); Ahmed, 2009 WL 55939 at *7 (same); but see Singh v. Napolitano, 2010 WL 1850156 (D.D.C. 2010) (holding that the court lacked jurisdiction).

The Court retains jurisdiction to adjudicate whether the government has unreasonably delayed issuing a final decision in Hassene's case.

1  **B.    The Government's Rule 12(b)(6) Motion to Dismiss**

2      Under the APA, a delay in an administrative proceeding is only unreasonable if the

3  delay results in prejudice to the plaintiff.  See Norton v. S. Utah Wilderness Alliance, 542

4  U.S. 55, 65 (2004) ("Under the terms of the APA, respondent must direct its attack against

5  some particular 'agency action' that caused it harm.") (quotations omitted).  The government

6  argues that Hassene has suffered no prejudice as a result of the delays by USCIS in deciding

7  his application for an adjustment of status, and indeed has benefitted from the delay, because

8  without the exercise of the Secretary's discretion in his case, his application will likely be

9  denied.  See Martin Decl. ¶ 20, docket no. 7, ex. A.  Given that the UEDF meets the

10  definition of a Tier III undesignated terrorist organization, (Martin Decl. ¶ 10, docket no. 7,

11  Ex. A), it is likely that Hassene will benefit as a result of the hold.  Hassene apparently

12  understands that this result is likely, but believes that he will be able to obtain an adjustment

13  of his status through the administrative appeals process.

14      Hassene's complaint alleges that, as a matter of law, an 18 month delay in

15  adjudicating his application for adjustment of status is unreasonable under the APA.

16  Although the government contends that it is "likely" that Hassene's application will be

17  denied, it has not foreclosed the possibility that his application may be granted.  Construing

18  the complaint in the light most favorable to the plaintiff, it is possible that Hassene will

19  benefit by having a final adjudication of his application, and dismissal under Rule 12(b)(6) is

20  not appropriate.

21  **C.    The Government's Motion for Summary Judgment**

22      The question before the Court is whether the delay in adjudicating Hassene's

23  application for adjustment is unreasonable as a matter of law.  5 U.S.C. § 706(1).  In

24  determining whether a delay is reasonable, the Court must evaluate what are known as the

25  "TRAC" factors.  Independence Mining Co. v. Babbitt, 105 F.3d 502, 507 n.7 (9th Cir.

26  1997).  These include:

(1) the time agencies take to make decisions must be governed by a "rule of reason;"

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and

(6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

Id. With respect to factors 1 and 2, there is no timetable in either the statute governing an applicant's adjustment of status, or the statute authorizing the Secretary's additional discretion to issue exemptions. See 8 U.S.C. §§ 1159(b), 1182(d)(3)(B)(i). Therefore, USCIS must process Hassene's application within a reasonable time. Khan, 2009 WL 941574 at *8, citing 5 U.S.C. § 555(b).

The government emphasizes that unlike other cases regarding adjustment of status, the process for issuing an exemption is complex, and requires consultation between a number of government agencies, including the Secretary of State, Attorney General, and Secretary of Homeland Security. See 8 U.S.C. § 1182(d)(3)(B)(i). The government further asserts that it is making progress in addressing exemptions for Tier III organizations, citing three recent examples of exemptions issued by the Secretary. Defs.' Mot. at 18, n.10, docket no. 7.

In similar cases, courts have held that an 8-12 month delay is not presumptively unreasonable. Singh v. Heinauer, 2008 WL 5110862; Khan, 2009 WL 941574. However, plaintiff's case has been delayed for much longer; it has been 22 months since he filed his application for adjustment.[3] Compl. ¶ 6, docket no. 1. Moreover, the government has

---

[3] Although plaintiff cites authority from this District for the proposition that a two year delay is presumptively unreasonable, that case involved the government's failure to perform a background check, which does not involve the complex exemption determination at issue in this case. See Rajput

ORDER  -7-

1   provided no estimate of the time it may take to make a decision, how far along in the

2   exemption process it is, or what factors it is taking into consideration in addressing the

3   plaintiff's case.  The government cannot defer making a decision on Hassene's application

4   indefinitely.

5        Nonetheless, the plaintiff has produced no evidence demonstrating that he has been

6   prejudiced by the delay, or that he will continue to be prejudiced as a result of the delay.[4]

7   Given the fact that the government has a compelling national security interest in creating new

8   policy related to exemptions for Tier III terrorist organizations, a 22 month delay is not

9   presumptively unreasonable, and the government is entitled to summary judgment.  See

10  Khan, 2009 WL 941574 ("One would hope [the Secretary's determination on an exemption]

11  is not made lightly, and the Court recognizes that it may be time consuming.").   However,

12  the Court's dismissal of Hassene's claims is without prejudice, and he is free to refile at a

13  later date if the government fails to make a decision on his application.

14       **D.    The Government's Motion to File Response to Plaintiff's Surreply**

15       On May 21, 2010, Hassene filed a surreply, docket no. 12, that identified a January

16  2010 Supreme Court opinion that he believes is relevant to the Court's analysis of

17  jurisdiction under 8 U.S.C. § 1252(g).[5]  Hassene's surreply was unaccompanied by a request

18  for leave to file additional briefing.  As the Court has held that it has jurisdiction under

19  section 1252(g), the Court STRIKES the surreply as unnecessary and improperly filed.  The

20  Court further DENIES the government's motion for leave to file a response to the surreply,

21  docket no. 13, as moot.

22

23  ────────────────

24  v. Mukasey, 2008 WL 2519919, *6 (W.D.Wash. 2008).

25       [4] Plaintiff's briefing discusses potential prejudice he faces due to the delay, but plaintiff
    submitted no declarations supporting his opposition to summary judgment.  Plaintiff may not rest on the
    allegations in his pleadings in responding to a motion for summary judgment. Fed. R. Civ. P. 56(e)(2).

26       [5] The Court has reviewed the Supreme Court's decision in Kucana v. Holder, 130 S. Ct. 827,
    837-38 (2010).  The decision does not change the Court's jurisdictional analysis under section 1252(g).

ORDER   -8-

## IV.   CONCLUSION

For the reasons stated above, the Court DENIES the government's motions to dismiss pursuant to Fed. R. Civ. P. 12(b) and GRANTS the government's motion for summary judgment, docket no. 7.  Although a 22 month delay is not unreasonable as a matter of law in the circumstances of this case, the Court's ruling is without prejudice to Mr. Hassene filing a new lawsuit at a later date if the government continues to delay issuing a decision on his application in the future.  The Court also STRIKES the surreply filed by Plaintiff, docket no. 12, and DENIES the government's motion for leave to file a response to plaintiff's surreply, docket no. 13, as moot.

IT IS SO ORDERED.

DATED this 10th day of June, 2010.


Thomas S. Zilly
United States District Judge

ORDER   -9-